UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGM DEVELOPMENT GROUP, INC.,

               Petitioner,

v.

JEFFREY RINDE, et al.,

               Respondents.

CIVIL ACTION No. 25 Civ. 3208 (JHR) (SLC)

**REPORT AND RECOMMENDATION**

**SARAH L. CAVE,** United States Magistrate Judge.

**TO THE HONORABLE JENNIFER H. REARDEN**, United States District Judge:

## I. INTRODUCTION

On April 17, 2025, Petitioner AGM Development Group, Inc. ("AGM") filed a Petition to Compel Arbitration (Dkt. No. 1 (the "Petition")) seeking an Order under the Federal Arbitration Act, 9 U.S.C. § 4 (the "FAA"), compelling Jeffrey Rinde ("Mr. Rinde") and CKR Law, LLP ("CKR Law," together with Mr. Rinde, the "Respondents") to arbitrate all claims and disputes arising out of an escrow agreement (Dkt. No. 1-1, the ("Escrow Agreement")) between the parties at the American Arbitration Association ("AAA") under the AAA Consumer Arbitration Rules. (Dkt. No. 1 at 1). AGM having served Respondents with the Petition (see Dkt. Nos. 8; 9) and Respondents having failed to timely respond, AGM sought and received a Certificate of Default from the Clerk of Court.[1] (Dkt. No. 14 (the "CoD")). On June 5, 2025, AGM moved for a default judgment on the Petition pursuant to the FAA and

---

[1] We note that the CoD incorrectly refers to AGM's pleading as a "complaint" instead of a "petition" and refers to Respondents as "defendants." (Dkt. No. 14). We confirm, however, that AGM filed a petition, not a complaint, and the proper designation for Mr. Rinde and CKR Law is "Respondents," not "defendants." (See Dkt. No. 1). This discrepancy has no bearing on our recommendations.

9 U.S.C. § 206. (Dkt. Nos. 15–17 (the "Motion")). The Honorable Jennifer H. Rearden referred the Motion to the undersigned for a report and recommendation. (Dkt. No. 19).

For the reasons set forth below, the Court respectfully recommends that the Motion be **GRANTED**.

## II.    BACKGROUND

Given Respondents' default, we accept as true all well-pleaded factual allegations in the Petition. See CKR Law LLP v. Anderson Invs. Int'l, LLC, 544 F. Supp. 3d 474, 482 (S.D.N.Y. 2024) ("Because the respondents are in default, the Court accepts as true all well-pleaded allegations in the petition [to compel arbitration.]") ("CKR Law");[2] see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.").

### A.  Factual Background

On October 15, 2019, AGM as borrower, CKR Law as escrow agent, and Ault Capital, LLC ("A-Cap") as lender[3] entered into the Escrow Agreement, pursuant to which AGM placed $480,000.00 (the "Escrow Payment")[4] in escrow with CKR Law in anticipation that CKR Law

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.
[3] A-Cap is not a party to this action.
[4] While the Escrow Agreement states that AGM agreed to place $618,000.00 in escrow with CKR Law, AGM alleges in the Petition that it deposited $480,000.00 in escrow with Respondents. (Compare Dkt. No. 1-1 at 1, with Dkt. No. 1 ¶ 7). We adopt AGM's allegation in the Petition, but the discrepancy has no bearing on our analysis. (See Dkt. No. 1 ¶ 7).

would facilitate A-Cap's multi-million dollar loan to AGM (the "Loan"). (See Dkt. Nos. 1 ¶ 7; 1-1). Mr. Rinde was CKR Law's sole partner during the transaction. (See Dkt. No. 1 ¶ 4).

AGM made the Escrow Payment to Respondents, but AGM did not receive the Loan from A-Cap. (See Dkt. No. 1 ¶ 10). AGM then demanded a refund of the Escrow Payment, but Respondents did not oblige. (See id. ¶ 11). AGM alleges that Respondents' conduct is part of a larger fraudulent scheme in which Respondents entered into at least thirty (30) identical escrow agreements with other prospective borrowers and the same lenders and that "not a single one of those prospective borrows had every received any amount of promised loan funds nor the return of their respective escrow payments." (Id. ¶ 12).

Pursuant to the Escrow Agreement, the parties agreed to resolve disputes through binding arbitration in the City, County, and State of New York. (See Dkt. Nos. 1-1 at 7 ¶ 16; 1 ¶ 14 (the "Arbitration Clause")). The Arbitration Clause provides:

> This Agreement shall be interpreted according to and subject to New York Law . . . In the event of any differences or dispute of whatever nature arising from this Agreement (which shall include any failure to agree on any matter which requires the Escrow Parties' agreement for the purposes of implementation of this Agreement) or any other matter related thereto which cannot be settled by direct negotiation within thirty (30) days after either of the Escrow Parties has notified the other parties in writing of the existence of the dispute, such differences or dispute shall be referred to and finally settled by binding arbitration in City, County and State of New York.

(Dkt. Nos. 1-1 at 7 ¶ 16; 1 ¶ 14). The Arbitration Clause does not specify an arbitral forum in which the parties are to bring any dispute arising under the Escrow Agreement. (See Dkt. Nos. 1 ¶ 15; 1-1).

On February 19, 2025, after advising Respondents of its intent to arbitrate this dispute, AGM proposed to Respondents to amend the Arbitration Clause to select the AAA as the

3

arbitral form and the AAA Consumer Arbitration Rules as the applicable rules.  (See Dkt. Nos. 1 ¶ 16; 1-2 (the "Proposed Amendment")).  On February 24, 2025, Respondents advised AGM that they would not sign the Proposed Amendment, but Mr. Rinde stated that Respondents "d[id] not oppose submitting the dispute with [AGM] to the [AAA] Consumer Arbitration forum[.]"  (Dkt. Nos. 1 ¶ 17; 1-3).

On March 10, 2025, AGM filed with the AAA Consumer Division a Statement of Claim against Respondents.  (Dkt. No. 1 ¶ 18).  On March 19, 2025, the AAA advised AGM that it required either an agreement naming the AAA and its rules or a court order referencing the AAA, and absent written confirmation of the parties' agreement to submit to arbitration before the AAA, the AAA would administratively close the matter after March 26, 2025.  (Dkt. Nos. 1 ¶¶ 19–20; 1-4; 1-5).  AGM then contacted Respondents via telephone to inquire as to whether Respondents would agree to submit to arbitration before the AAA, and Respondents refused.  (Dkt. No. 1 ¶ 21).  Without the required written confirmation of the parties' agreement to submit to arbitration before the AAA, the AAA administratively closed the matter on March 27, 2025.  (Dkt. Nos. 1 ¶ 22; 1-6).

**B. <u>Procedural History</u>**

On April 17, 2025, AGM filed the Petition to compel Respondents to arbitrate all disputes arising out of the Escrow Agreement at the AAA under the AAA Consumer Arbitration Rules.  (Dkt. No. 1).  On May 14, 2025, AGM filed proof of service of the summonses and Petition on Respondents.  (Dkt. Nos. 8; 9).  After Respondents failed to timely respond to the Petition, AGM sought and received the CoD from the Clerk of Court.

(Dkt. Nos. 12–14).  On June 5, 2025, AGM filed the Motion.  (Dkt. Nos. 15–17).  Respondents did not timely respond to the Motion.

On June 9, 2025, we ordered AGM to file proof of service of the CoD and the Motion on Respondents.  (Dkt. No. 18).  We also ordered that Respondents respond to the Motion and warned that if Respondents failed to (i) respond to the Motion or (ii) contact the Court and request an in-Court hearing, the undersigned would "issue a report and recommendation concerning the Motion based on AGM's written submissions alone without an in-Court hearing."  (Dkt. No. 18).  AGM filed the required proof of service, which indicated that the CoD and Motion were served on CKR Law and Mr. Rinde on June 13, 2025 and June 20, 2025, respectively, making CKR Law's deadline June 27, 2025 and Mr. Rinde's July 5, 2025.  (Dkt. Nos. 18; 20–21).  Respondents neither responded to the Motion nor contacted the undersigned's Chambers requesting an in-Court hearing.

On October 2, 2025, in an abundance of caution and to give Respondents one final opportunity to be heard, we convened a telephonic hearing on the Motion, at which AGM appeared but not Respondents.  (Dkt. Nos. 22–25; Minute Entry dated October 2, 2025).  We therefore deem the Motion unopposed.

5

### III. DISCUSSION[5]

**A. Subject Matter Jurisdiction**

As an initial matter, the Court has federal subject matter jurisdiction over this action based on the parties' diverse citizenship. See 28 U.S. § 1332(a). (See Dkt. No. 1 ¶ 5). Under § 1332(a), district courts have diversity jurisdiction where the opposing parties have "complete diversity" of citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); see Bartlett v. Honeywell Int'l Inc., 737 F. App'x 543, 547 (2d Cir. 2018) (summary order) ("Diversity jurisdiction is present when there is complete diversity between the parties and the matter in controversy exceeds the sum or value of $75,000."); SGM Holdings LLC v. Andrews, 743 F. Supp. 3d 545, 557 (S.D.N.Y. 2024) ("Federal court jurisdiction exists . . . when there is diversity of citizenship and the amount in controversy exceeds $75,000.00.").

"Section 4 of the FAA states that a motion to compel arbitration can be filed in any United States district court which [] would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties . . ." CKR Law, 544 F. Supp. 3d at 478 (quoting 9 U.S.C. § 4). As the Supreme Court has explained, Section 4 of the FAA "provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of

---

[5] In CKR Law, the Honorable Jed S. Rakoff addressed a similar action in which CKR Law (one of the Respondents in this action) petitioned to compel arbitration against several companies involved in similar financial transactions with CKR Law as the escrow agent. 544 F. Supp. 3d at 477–78. As explained in § III.C–D, supra, we find Judge Rakoff's analysis in CKR Law persuasive and applicable and reach the same conclusions with respect to the Motion.

citizenship or some other independent basis for federal jurisdiction before the order can issue." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983).

1. **Complete Diversity**

"It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show complete diversity — that is, that it does not share citizenship with any defendant." Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 445 (2d Cir. 1995). Individuals are citizens of the state in which they are domiciled, see Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000), while corporations are citizens of their state of incorporation as well as the state in which their principal place of business is located. See 28 U.S.C. § 1332(c). "A limited liability partnership has the citizenship of each of its general and limited partners for the purposes of diversity jurisdiction." Monitronics Funding LP v. Pinnacle Sec., LLC, No. 12 Civ. 1992 (JGK), 2012 WL 967623, at *1 (S.D.N.Y. Mar. 21, 2012) (citing Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51–52 (2d Cir. 2000)).

AGM alleges that it is a Canada corporation with a principal office in Canada, making AGM a citizen of Canada. (Dkt. No. 1 ¶¶ 1, 5). CKR Law is a California limited liability partnership with its sole partner, Mr. Rinde, being a citizen of New York, making both Respondents citizens of New York. (Dkt. No. 1 ¶¶ 2–5). Accepting all well-pleaded factual allegations in the Petition as true, see CKR Law LLP, 544 F. Supp. 3d at 482, there is complete diversity between the parties.

2. **Amount in Controversy**

"As for the amount in controversy, so long as the sum claimed is made in good faith, dismissal for lack of subject matter jurisdiction is unwarranted unless it appears to a legal certainty that the claim is really for less than [$75,000]." CKR Law, 544 F. Supp. 3d at 478–79 (citing Doctor's

Assocs., Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998)).  "[T]he amount in controversy in a petition to compel arbitration ... is determined by the underlying cause of action that would be arbitrated."  CKR Law, 544 F. Supp. 3d at 479 (quoting Doctor's Assocs., 150 F.3d at 160).

AGM's Escrow Payment was $480,000.00 (see n.4, supra), but AGM did not receive the Loan, which was to be in the millions of dollars, from A-Cap or a refund of the Escrow Payment from Respondents.  (See Dkt. No. 1 ¶¶ 7–11).  The underlying claim's amount in controversy therefore exceeds $75,000.  See Doctor's Assocs., 150 F.3d at 160.  Accordingly, the Court has diversity jurisdiction over this action.

### B. Personal Jurisdiction

"[I]n this Circuit, a court may — but is not required to — undertake a personal jurisdiction analysis before granting default judgment."  CKR Law, 544 F. Supp. 3d at 479–80 (declining to analyze personal jurisdiction before entering default judgment on a petition to compel arbitration); see Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 n.7 (2d Cir. 2010) ("We need not — and explicitly do not — address here whether a district court must investigate its personal jurisdiction over defendant before entering a default judgment.  We leave that issue for another day and hold only that a court may raise personal jurisdiction sua sponte when a defendant has failed to appear.").

Some courts in this Circuit, however, have opted to analyze personal jurisdiction before entering default judgement against a non-appearing party in the interest of judicial economy.  See CKR Law, 544 F. Supp. 3d at 480; see also Yao Wu v. BDK DSD, No. 14 Civ. 5402 (CBA), 2015 WL 5664256, at *2 (E.D.N.Y. Aug. 31, 2015), adopted by, 2015 WL 5664534 (Sept. 22, 2015) ("Judgments rendered against a defendant over whom a court lacks personal jurisdiction

8

are void and may later be vacated by motion brought pursuant to Fed. R. Civ. P. 60(b)(4). It therefore preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment.").

In the interest of judicial economy, we find AGM has demonstrated that the Court has personal jurisdiction over Respondents. CKR Law's principal place of business is in New York, Mr. Rinde is a citizen of New York, and Petitioners properly served (i) Mr. Linde by personally delivering a summons and the Petition to a person of suitable age and discretion at Mr. Linde's place of business and mailing a copy of the summons and Petition to Mr. Linde at his place of business, and (ii) CKR Law by delivering two copies of a summons and the Petition to the New York Secretary of State. (Dkt. Nos. 1 ¶¶ 2–5; 8; 9). See Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."); Fed. R. Civ. P. 4(e)(1), (h)(1) (providing that an individual and a corporation may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district is located or where service is made"); N.Y. C.P.L.R. § 308(2) (permitting service on a natural person "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business … of the person" and by "mailing the summons … to the person to be served at his [] actual place of business…"); N.Y. B.C.L. § 306(b)(1) (permitting service on corporation by "personally delivering [duplicate copies of process] to and leaving with the secretary of state. . .").

Accordingly, the Court has personal jurisdiction over Respondents.

### C. Default Judgment

"Federal Rule of Civil Procedure 55 sets out a two-step procedure for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment." CKR Law, 544 F. Supp. 3d at 481 (citing New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." Mickalis, 645 F.3d at 128; see Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." Mickalis, 645 F.3d at 128.

#### 1. Step One – Entry of Default

"Under Rule 55(a), a party can enter default in one of two ways: either by failing to plead or by failing to 'otherwise defend' in the action." CKR Law, 544 F. Supp. 3d at 481. Entry of default, however, is unique in a proceeding to compel arbitration because the FAA mandates that the Court treat petitions to compel arbitration as motions, not complaints. See 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."); see also Moses H. Cone Memorial Hosp., 460 U.S. at 22 n.26 ("Under [Section] 6 of the Arbitration Act, [petitioner's] application for a [Section] 4 order was properly treated procedurally as a

motion."); Porcelli v. JetSmarter, Inc., No. 19 Civ. 2537 (PAE), 2019 WL 2371896, at *1 n.3 (S.D.N.Y. June 5, 2019) ("On a motion to compel arbitration under the FAA, the court applies a standard similar to that applicable for a motion for summary judgment."). Thus, petitions to compel arbitration are not treated as "actions" to which responsive "pleadings" are even possible in the first instance. See ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 112 (2d Cir. 2012). Accordingly, Respondents' failure to respond to the Petition, like a party's failure to respond to a motion for summary judgment, does not automatically warrant default judgment "because, even where a non-moving party fails to respond to a motion for summary judgment, a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109–10 (2d Cir. 2006).

As set forth above, (see n.5, supra), CKR Law bears many similarities to this action. CKR Law, 544 F. Supp. 3d at 477–84. In CKR Law, CKR Law filed a petition to compel arbitration under the FAA against several companies relating to financial transactions in which CKR Law served as escrow agent. Id. at 477–78. After the respondent companies failed to respond to the petition, appear in the action, and attend a telephonic hearing, certificates of default were entered against the companies. Id. at 481. Although Judge Rakoff acknowledged that some courts have declined to enter default on a petition to compel arbitration where respondents failed to respond, id. at 481–82 (collecting cases), he concluded that the entry of default was appropriate because the companies failed to "otherwise defend" against the petition, which is "a term that . . . [b]y its very language . . . is broader than the mere failure to plead." Id. at 482. Judge Rakoff noted that the "respondents should have responded in some fashion, e.g., by

11

seeking an extension, arguing the merits, raising jurisdictional or venue objections, etc." — or even just by attending the telephonic hearing, and their failure to do so warranted entry of default. Id. at 482.

Here, as in CKR Law, Respondents, after having been served with a summons and the Petition (Dkt. Nos. 8; 9), failed to respond to the Petition, appear in the action, or attend the telephonic hearing. (See Dkt. Nos. 22–25). Indeed, Respondents have not participated in this action in any manner, either by seeking an extension, raising jurisdictional or venue objections, arguing the merits, or otherwise. See CKR Law, 544 F. Supp. 3d at 481. Accordingly, because Respondents failed to fulfill their obligation to "otherwise defend" against the Petition, as Judge Rakoff found in CKR Law, the first step — entry of the CoD — was warranted. See id. at 481.

**2. Step Two – Default Judgment**

Accepting as true all well-pleaded allegations in the Petition, we "must determine whether those allegations establish a legal basis for liability." CKR Law, 544 F. Supp. 3d at 482 (citing Mickalis, 645 F.3d at 137).

"Under the FAA, a district court's role in resolving a motion to compel arbitration [] is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." CKR Law, 544 F. Supp. 3d at 483 (citing Shaw Grp., Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003)). In CKR Law, the arbitration clause in the parties' escrow agreement was identical to the Arbitration Clause here. CKR Law, 544 F. Supp. 3d at 483. (See Dkt. Nos. 1-1 at 7 ¶ 16; 1 ¶ 14).

As for the first prong — whether a valid agreement or obligation to arbitrate exists — Judge Rakoff found that "this language constitutes an enforceable arbitration agreement." CKR Law, 544 F. Supp. 3d at 483. Because the Arbitration Clause is identical to the one in CKR Law, we also find that the Arbitration Clause constitutes an enforceable arbitration agreement. See id. at 483.

As for the second prong — whether one party to the agreement has failed, neglected or refused to arbitrate — in CKR Law, Judge Rakoff found that respondent companies "failed, neglected or refused to arbitrate" where the petition alleged that the parties tried, but failed, to settle the dispute. CKR Law, 544 F. Supp. 3d at 483. Here, although Mr. Rinde emailed AGM's counsel that Respondents did not oppose submitting the dispute to the AAA, (see Dkt. No. 1-3), Respondents thereafter (i) refused to sign AGM's Proposed Amendment, and (ii) refused via telephone to submit to arbitration before the AAA resulting in the AAA administratively closing its file. (Dkt. No. 1 ¶¶ 16–22). Thus, the Petition adequately alleges that Respondents have refused to arbitrate. Therefore, "the [P]etition adequately states a claim for an order compelling the [R]espondents to arbitrate." CKR Law, 544 F. Supp. 3d at 483.

### 3. Remedy

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Section 4 of the FAA mandates that, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." CKR Law, 544 F. Supp. 3d at 484. In CKR Law, Judge Rakoff noted that although the arbitration clause "d[id] not specify any particular forum for the arbitration,"

the petition "specifically request[ed] an order requiring respondents to arbitrate their disputes before JAMS International pursuant to the JAMS International Arbitration Rules." Id. at 483–84. Judge Rakoff pointed to another case in this District, HZI Research Ctr. v. Sun Instruments Japan Co., Inc., which held that "[i]f the parties imperfectly . . . designate the instrumentality through which arbitration should be effected, the court will enforce the contract by making an appropriate designation." No. 94 Civ. 2146 (CSH), 1995 WL 562181, at *3 (S.D.N.Y. Sept. 20, 1995) (collecting cases). Judge Rakoff followed that example and "order[ed] the respondents to arbitrate before [JAMS] International, as sought for in the petition." CKR Law, 544 F. Supp. 3d at 484. We similarly find that we have the authority to order Respondents to arbitrate before the AAA, pursuant to the AAA Consumer Arbitration Rules, as the Petition seeks. (Dkt. No. 1 at 6–7).

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends that the Motion be **GRANTED** and the Proposed Judgment ordering Respondents to arbitrate before the AAA pursuant to the AAA Consumer Arbitration Rules (Dkt. No. 17) be **ENTERED**.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Respondents at the following addresses:

CKR Law, LLP
1330 Avenue of the Americas
14th Floor
New York, NY 10019

Mr. Jeffrey A. Rinde
1330 Avenue of the Americas
14th Floor
New York, NY 10019

and

Mr. Jeffrey A. Rinde
Jingsh Law Firm LLP
1230 Avenue of the Americas
Floor 16
New York, New York 10020

Dated:   New York, New York
         October 27, 2025

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**

\*             \*             \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Rearden.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).